EVANDER, J.
Appellant was convicted of sexual battery upon a person physically helpless to resist in contravention of section 794.011(4)(a), Florida Statutes (2003). He raises several points on appeal — of which we find only one has merit. Appellant contends the trial court improperly prevented him from introducing testimony of two witnesses which would have impeached the testimony of the alleged victim. We agree and reverse.
The state’s primary witness was the alleged victim, R.H. Appellant and R.H. met, through mutual friends, in Daytona Beach. R.H. and a female friend were looking for a place to stay until they could “get back on their feet” and appellant agreed they could move in with him. The three lived together in Daytona Beach for approximately one year. In January, 2004, appellant and R.H. moved into a two-bedroom apartment in Orlando. R.H. testified that she looked upon appellant as a “big brother” and they did not have a romantic relationship. Appellant and R.H. would regularly socialize together, including drinking with mutual friends. On four — five of these occasions, R.H. would consume alcoholic beverages to the extent that she would “blackout.” On these occasions, R.H. would be unable to recall the events of the evening. She testified that on at least two of these occasions (between January, 2004, and March, 2004), she woke up without any clothes on and feeling as if someone had had sex with her. After one of these occasions, she asked appellant if anything had “happened” between them. According to R.H., appellant initially denied anything had occurred between the two, but shortly thereafter acknowledged that “something happened between us.” R.H. testified she thought about going to the police, but decided not to because it would be his word against hers. Notwithstanding R.H.’s suspicions and appellant’s alleged admission, R.H. did not immediately move out of the apartment.
In April, 2004, a mutual friend, Cassie Houchins, moved into the apartment with appellant and R.H. In early June, 2004, R.H. and Cassie moved to a hotel. R.H. testified that she moved out because she and appellant had been arguing a lot. After two months of living in a hotel, Cassie moved in with her boyfriend. R.H. contacted appellant and asked if she could move back in with him. Appellant agreed and R.H. returned to the two-bedroom apartment in August, 2004. At the time of R.H.’s return, another woman (Sarah Bow-der) and her three children, were also residing in the apartment. R.H. did not believe appellant and Sarah had a romantic relationship. Sarah’s children stayed in one bedroom and the three adults would rotate as to who slept in the remaining bedroom and who slept on the couch.
In October, 2004, R.H.’s new boyfriend was also living in the apartment. On October 31, 2004, R.H. wanted to show Sarah her scrapbook. Because of space limitations, R.H. kept some of her personal belongings in appellant’s bedroom closet. While searching for her scrapbook, R.H. came upon a box owned by appellant. *637 This box contained numerous photographs depicting R.H. naked and apparently asleep or unconscious. R.H. testified these photographs were taken without her knowledge or consent. Two of the photographs in the box depicted a man and a woman engaged in sexual intercourse. Although neither of the photos showed the upper half of the woman’s body, R.H. identified herself as the woman in the photos based on her bathing suit lines and a birthmark. She identified appellant as the male in the two photos. (One of the photos included the face of the male. In the other photo, R.H. identified appellant based on the shape and location of a tattoo.) R.H.’s new boyfriend came into the room, saw the photos and became angry. The police were immediately contacted and appellant was subsequently arrested. R.H. maintained that she had never had consensual sex with appellant. She also maintained that she had never seen or been aware of the existence of these photographs prior to this date.
On cross-examination, R.H. acknowledged that her boyfriend demanded an explanation regarding the photographs. She denied the police were called to placate her boyfriend. Of particular importance to this appeal, R.H. denied that in May, 2004, she had discussed “sex” photos taken of her by appellant with her former roommate, Cassie. R.H. further denied that in June, 2004, she had a discussion with appellant’s mother concerning the existence of “pornographic” pictures of R.H.
After the state rested, appellant attempted to introduce testimony from Cassie to impeach R.H.’s testimony that R.H. first learned of the existence of the “sex photos” on October 31, 2004. When Cassie was asked whether she had a conversation with R.H. in May, 2004, regarding the existence of “sex photos” of R.H., the state objected on hearsay grounds. Although appellant’s counsel stated the testimony was being offered for impeachment purposes, the trial judge sustained the objection, stating: “[Ijmpeachment is not an exception to the hearsay rule.” Appellant’s effort to introduce the testimony of a conversation between appellant’s mother and R.H. in June, 2004, regarding “pornographic” photos of R.H. was similarly thwarted. The trial court did permit appellant’s counsel to make a proffer of Cassie’s testimony and appellant’s mother’s testimony out of the presence of the jury. In her proffered testimony, Cassie stated that R.H. had told her that she (R.H.) had found photographs in appellant’s closet depicting R.H. and appellant having sex. R.H. further stated she didn’t know if it was “voluntary or involuntary” because she was drunk. Appellant’s mother’s proffered testimony was that she asked R.H. if appellant had taken pornographic pictures of her. According to appellant’s mother, R.H. was “flustered by the question” but then said “it was no big deal.” The proffered testimony did not change the trial court’s ruling.
The trial judge erred in finding the proffered testimony to be hearsay. The testimony of Cassie and appellant’s mother was offered to impeach the testimony of R.H. A statement offered to impeach a witness is not hearsay because it is not offered to prove the truth of the matter asserted. Rather, it is offered to show why the witness is not trustworthy. Fitzpatrick v. State, 900 So.2d 495, 515 (Fla.2005).
The state argues the trial court’s decision to exclude the proffered testimony was correct, albeit for the wrong reason. As the state correctly notes, section 90.608(5), Florida Statutes, provides that a party may attack the credibility of a witness by introducing testimony of another witness that material facts are not as tes *638 tified by the witness being impeached. The state contends the proffered testimony was inadmissible because the date on which R.H. learned of the existence of the photographs was not a material fact. We cannot agree.
Appellant argued to the jury that R.H. falsely accused him of nonconsensual sex to placate an admittedly angry boyfriend. Certainly, appellant’s argument would be more plausible if R.H. had been aware of the photographs prior to the date on which her boyfriend first saw the photos. Second, if the jury believed R.H. was aware of the photographs prior to August, 2004, R.H.’s claim of nonconsensual sex would be undermined by the fact that she voluntarily chose to move back in with appellant in August.
Finally, during closing argument, the prosecutor specifically argued that R.H. did not contact the police prior to October 31, 2004, because October 31st was the date she first learned of the existence of the photographs. This argument was made to bolster R.H.’s credibility. Accordingly, it would appear that, at trial, the state considered the date on which R.H. learned of the existence of the photographs to be a material fact.
REVERSED and REMANDED for a new trial.
GRIFFIN and SAWAYA, JJ., concur.